UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACOBY ANTWINE MAIZE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5925** |
| **CORRECTHEALTH JEFFERSON, L.L.C., ET AL.** | **SECTION "N"(1)** |

### REPORT AND RECOMMENDATION

Plaintiff, Jacoby Antwine Maize, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. He named as defendants CorrectHealth Jefferson, L.L.C., Dr. Stacy Greene,[1] Jean Llovet, Dr. Christopher Marrero, Sheriff Newell Normand, Chief Sue Ellen Monfra, the State of Louisiana (through Attorney General James D. Caldwell), and the LSU Board of Supervisors.

The instant case is the second lawsuit plaintiff has filed in federal court alleging that he was not provided with adequate medical care for a fractured finger while incarcerated at the Jefferson Parish Correctional Center. In the first case, which was filed in 2012, the undersigned issued a report recommending that plaintiff's federal claims be dismissed with prejudice and that his state claims be dismissed without prejudice to their being asserted in the state courts. Maize v. Normand, Civ. Action No. 12-2723, 2013 WL 1288046 (E.D. La. Mar. 11, 2013). The United States District Judge adopted that recommendation and dismissed plaintiff's claims accordingly. Maize v. Normand, Civ. Action No. 12-2723, 2013 WL 1288044 (E.D. La. Mar. 27, 2013).

---

[1] In his complaint, plaintiff gives the defendant's surname as "Green"; however, the motion to dismiss filed on her behalf indicates that her surname is in fact "Greene."

Approximately sixth months later, plaintiff filed the instant lawsuit. In connection with the accompanying motion for a preliminary injunction, the undersigned held a hearing on November 7, 2013, and obtained and reviewed plaintiff's medical records from the Jefferson Parish Correctional Center.[2] On November 20, 2013, the undersigned issued a report recommending that (1) the motion for a preliminary injunction be denied, (2) the claims against Normand and Monfra be dismissed with prejudice, and (3) the claims against the State of Louisiana and the LSU Board of Supervisors be dismissed without prejudice.[3] On December 10, 2013, the District Judge adopted those recommendations and entered the appropriate order.[4]

The remaining defendants have now filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] Plaintiff has opposed those motions,[6] and the defendants have filed a reply to one of those opposing memoranda.[7]

## I.  Legal Standards of Review Under Rule 12(b)(6)

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007)

---

[2]   Those medical records were filed into this federal record. Rec. Doc. 13.

[3]   Rec. Doc. 19.

[4]   Rec. Doc. 23; Maize v. Correct Health Jefferson, L.L.C., Civ. Action No. 13-5925, 2013 WL 6490549 (E.D. La. Dec. 10, 2013).

[5]   Rec. Docs. 26 and 28.

[6]   Rec. Docs. 31, 40, and 41.

[7]   Rec. Doc. 34.

(quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Again, in deciding a Rule 12(b)(6) motion, it must be remembered that a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. Lormand v. US Unwired, Inc., 565 F.3d 228, 239 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

## II.  Prior Litigation

Because the instant lawsuit is related to, and in some ways a continuation of, plaintiff's prior lawsuit, a history of that case is necessary to put the instant case in the proper context.  In that prior lawsuit, plaintiff claimed that he was not provided with adequate medical care for a fractured finger and, as a result, suffered needless pain and would perhaps require corrective surgery to return his finger to normal.  However, plaintiff's federal claims were dismissed with prejudice because, based on his concessions and the medical records, it was clear that the defendants had not acted with deliberate indifference.[8]  Because plaintiff's federal claims were dismissed, the Court declined to exercise supplemental jurisdiction over his state law claims; therefore, those state law claims were dismissed without prejudice.

## III.  Plaintiff's Claims in the Instant Lawsuit

Plaintiff now again brings federal claims alleging deliberate indifference to his serious medical needs.  In the complaint, he alleged:

> Plaintiff avers that he complained of infectious pain in his right ring finger at which time 5 days antibotics were perscribed.  However, plaintiff continued to suffer with the pain and swelling began therefore he continued to make sick call request describing the pain as infectious pain.  Dr. Green ordered an x-ray of the finger which the radiologist diagnosed as a fracture to the finger.  I was thereafter referred to LSU Dr. C. Marrero via Telemed who then look at the x-ray and declared that the injury was healed and need OT/PT to remove the pain and lost of motion.  Dr. C. Marrero determined that the fracture was healed from the same x-ray which which claims a fracture.  My pain continued as I continued to complain throughout the months, month after month and I would receive another radiology report but no treatment for the infection the doctors (Green and Marrero) insisted was a fracture

---

[8]  Plaintiff conceded and his medical records showed that, for example, his hand was x-rayed on several occasions, he was evaluated by CorrectHealth staff numerous times, he was referred for outside evaluation at least once, and he received prolonged treatment with pain relievers.  Maize, 2013 WL 1288046, at *2.

that had healed.  Sept. 2012 I received a Rediologist Report which indicated (soft tissue swelling, mid-scophoid fracture and lythic lesion).  I continued to suffer and file sick call request for the pain, swelling and loss of motion.  I filed inmate grievances when the sick calls were ignored for extended periods.  This continued of the course of five months without treatment or doctor visit.  Then in Feb. 2013 I finally went to LSU orthopedic doctor who decided that they could only amputate my finger but would allow me to first consult their hand specialist.  The hand specialist order MRI screening which expose that my finger had suffer irreversable damage and that it was actively infected to the bone and the surrounding tissue is destroyed and badly infected.  The hand specialist determined that amputation was the only option because the infection had developed into osteomyelitis due to the period it had gone untreated.  I returned to the facility (JPCC) with the orders of the LSU hand specialist.  Dr. Green then decided to administer antibiotics instead of seeking the appointment for the surgery according to the recommendation of the LSU hand specialist.  I have been on antibiotic for 4 months and the infection is still getting worse.  The pain is worse and my blood pressure is constantly elevated. I'm often very weak because I can not eat much due to the loss of apetite.  I suffer greatly day and night and the pain rises throughout my arm and I feel the swelling of my veins yet I am still in this condition which is destroying my health.  Dr. C. Marrero of LSU Orthopedic Hospital failed to take my concerns seriously as I explain that the pain was an infections type pain and he assured me that it was not an infection because my pressure would've be elevated.  Dr. Marrero, again the second visit with him via telemed assured me the pain and swelling was due only to stiffness in the joint which needed to be worked out.  Though I continued to file inmate grievances defendant Jean Llovet head nurse of Correct Health Jefferson refuse to take my concerns seriously and acted deliberatly indiffrent to my medical concerns when she reviewed the Sept. 2012 radiologist report which informed her of a lythic lesion, which represents a number of serious possibilitys infection being one of them and she failed to have me sent to the hospital in a reasonable time period.  The actions and/or failed to act on the part of Dr. S. Green who failed to assure that my serious medical concerns were taken care before  and after the recommendation by the hand specialist.  Dr. S. Green allow me to suffer knowingly for months on antiboitic which could not stop the infection as already explained by the hand specialist.  The infection went to long untreated and the amputation is the only remedy.  Therefore Dr. Green ignored these reccomendation from the LSU hand specialist and acted against the orders which is causing further damage to my health and daily suffering.[9]

---

[9]    Rec. Doc. 3, pp. 6-9.  Plaintiff also stated: "The radiologist who is a defendant who's name is unknown to me acted deliberately indifferent to my medical need when he knowing filed radiologist reports claiming the finger to be healed then 8 months later in another x-ray report extensive damage which was the direct report of the passing of time and the failure to treat along with his false diagnosis." Rec. Doc. 3, p. 9.  However, plaintiff never properly identified and served the radiologist.

At the telephone hearing held in connection with the motion for a preliminary injunction on November 7, 2013, plaintiff testified that the amputation had since been performed, there was no sign of a lingering infection, and that an additional surgery had been scheduled.

### IV.  Motion to Dismiss filed by CorrectHealth Jefferson, L.L.C., Dr. Stacy Greene, and Jean Llovet

In their motion to dismiss, CorrectHealth Jefferson, L.L.C., Dr. Stacy Greene and Jean Llovet first argue that at least some of plaintiff's claims appear to be barred because they were already adjudicated and dismissed with prejudice in the prior lawsuit and/or are prescribed because they accrued more than one year before this lawsuit was filed.  Plaintiff counters that his current claims are founded on a different theory than his former claims, that many of his factual allegations are offered simply to place his current claims in context, and that his present lawsuit is based on a prolonged failure to provide correct and adequate care.  However, even if this Court were to assume for the purposes of this decision that plaintiff's claims are not barred by *res judicata* or the statute of limitations, the claims still would not be actionable under 42 U.S.C. § 1983 for the following reasons.

In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.  However, as the Court explained to plaintiff in his prior lawsuit, his right to medical care under the United States Constitution is extremely limited.  Specifically, regardless of

whether an inmate is a pretrial detainee or a convicted prisoner, his constitutional right to medical care is violated only if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

Even if the Court assumes for the purposes of this decision that plaintiff's fractured finger constituted a "serious medical need," his claims still clearly fail because there was no deliberate indifference. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." Id. (quotation marks and brackets omitted). Rather, "[d]eliberate encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Here, it is uncontested that plaintiff in fact received medical care. When he complained of his injury, medication was prescribed. When he continued to complain, an x-ray was ordered. When that x-ray revealed a fracture, plaintiff was referred to an outside provider, Dr. Christopher Marrero. Dr. Marrero concluded that the fracture had already healed and that plaintiff required only physical and occupational therapy. When plaintiff continued to complain, more x-rays were taken, and the conclusion was the same. Although a subsequent MRI revealed an untreated infection which by that time had caused irreversible damage, plaintiff does not allege that the jail medical staff was in fact aware of the infection. Rather, his claim is based primarily on the fact that the original diagnosis was wrong. While that is indeed regrettable, it is indisputable that an incorrect diagnosis

is insufficient to state a claim for deliberate indifference. Domino, 239 F.3d at 756. While such a misdiagnosis might constitute negligence or medical malpractice, it is beyond cavil that "acts of negligence or medical malpractice do not constitute deliberate indifference." Sama v. Hannigan, 669 F.3d 585, 590 (5th Cir. 2012); accord Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004) ("Simple medical malpractice or negligence does not constitute a violation of an inmate's constitutional rights. It is, instead, a violation of a tort duty of care and must be pursued in state court.").

Lastly, the Court notes that plaintiff complains about the fact that, after the MRI revealed the presence of an infection, Dr. Greene opted to attempt to treat that infection by using antibiotics instead of following the specialist's recommendation that plaintiff's finger be amputated. However, a prison doctor is not bound to follow the recommendations of a specialist or other outside provider, and, without more, such a failure to do so "suggests nothing more than a difference in opinion as to the appropriate method of treatment under the circumstances," *not* actionable deliberate indifference. Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999); accord Wilson v. Healy, Civ. Action No. H-08-0096, 2011 WL 1463569, at *5 (S.D. Tex. Mar. 31, 2011) ("It is well established that a prison medical provider's failure to follow the recommendations of a specialist or outside provider's treatment suggestions does not, standing alone, demonstrate deliberate indifference.").

In summary, while it is unfortunate that plaintiff's initial diagnosis was incorrect, that his treatment was unsuccessful, and that pain persisted despite treatment, those facts are insufficient to state a claim of deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D.

La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Therefore, the motion to dismiss filed by CorrectHealth Jefferson, L.L.C., Dr. Stacy Greene, and Jean Llovet should be granted, and the federal civil rights claims against those defendants should be dismissed with prejudice.

### V.  Motion to Dismiss filed by Dr. Christopher Marrero

Dr. Christopher Marrero, the LSU Health Sciences Center physician who diagnosed plaintiff as having nothing more than a healed fracture, has also filed a motion to dismiss the claims against him. Dr. Marrero argues that because the allegations against him, even if accepted as true, are indicative of nothing more than negligence or medical malpractice, he cannot be held liable under 42 U.S.C. § 1983 for inadequate medical care. For the reasons already explained, he is clearly correct. See, e.g., Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) ("Unsuccessful medical treatment does not give rise to a § 1983 cause of action. Nor does mere negligence, neglect or medical malpractice." (citations, quotation marks, and brackets omitted)). Therefore, his motion to dismiss should also be granted, and the federal civil rights claims against him should likewise be dismissed with prejudice.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that the motions to dismiss, Rec. Docs. 26 and 28, be **GRANTED** and that plaintiff's federal civil rights claims against CorrectHealth Jefferson, L.L.C., Dr. Stacy Greene, Jean Llovet, and Dr. Christopher Marrero be **DISMISSED WITH PREJUDICE**.[10]

---

[10] There is no indication in the complaint that plaintiff is asserting any claims under state law in this federal proceeding. However, if he reveals such an intention in any objections filed to this Report and Recommendation, the Court should decline to consider any such claims. See 28 U.S.C.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this fourteenth day of May, 2014.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

§ 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").  If plaintiff wishes to pursue claims under state law, he should do so in the state courts.

[11]   Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.